IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRADLEY WATSON, | : |
| Plaintiff, | : Case No. 2:10-CV-00538 |
| v. | : JUDGE ALGENON L. MARBLEY |
| CITY OF MARYSVILLE, OHIO, et al., | : Magistrate Judge Norah McCann King |
| Defendants. | : |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on the Motion for Summary Judgment filed by City of Marysville, Ohio, Police Chief Floyd Golden, Assistant Police Chief Glenn Nicol, Officer Christopher Diehl, and Sergeant Ronald Nicol ("Defendants"). (Dkt. 28.) For the reasons set forth herein, the Defendant's Motion is **GRANTED**, and Plaintiff's action is **DISMISSED** in its entirety.

**II. BACKGROUND**

**A. Factual Background**

Plaintiff Bradley Watson brings this action against individual police officers, their supervisors, and the City of Marysville for allegedly depriving him of his constitutional and common law rights through the unreasonable use of force against him during his arrest on June 14, 2008. On that night, at approximately 9:50 p.m., Officer Diehl of the Marysville Police Department ("MPD") responded to the Mill Valley neighborhood of Marysville after receiving a call regarding a six-foot-four, bald white male wearing a white t-shirt and carrying an assault

rifle.  This individual was reportedly located on Mill Wood Blvd. at the third house to the right of the Cobblestone Way intersection.

Officer Diehl entered the Mill Valley neighborhood with the overhead lights and siren to his police cruiser activated.  He ultimately stopped his vehicle on Cobblestone Way, approximately 70 yards from Mill Wood Blvd., and turned his lights and siren off.  Mr. Watson was walking outside in his neighborhood that evening to let off some steam, and had decided to stop at a bench near the intersection of Mill Wood Blvd. and Cobblestone Way ("the Intersection").  From his police vehicle, Officer Diehl noticed Mr. Watson, and observed that he appeared to be over six feet tall; was wearing a white t-shirt; and was carrying a black shoulder bag.  Upon seeing Officer Diehl's police cruiser, Mr. Watson got up from the bench, grabbed his shoulder bag, and began walking across Mill Wood Blvd., away from Officer Diehl's stopped cruiser.

Officer Diehl called out to Mr. Watson and requested that he re-cross the street to speak with him.  Mr. Watson stopped and faced Officer Diehl, but refused to come across the street.  Officer Diehl further requested that Mr. Watson put down his computer bag and sit on the curb of the road.  After multiple requests, Mr. Watson eventually threw down his bag, visibly upset at the officer's request, and stated that the bag contained a "$4000 computer."  Mr. Watson appeared agitated, continuously waving his arms in irritation at the officer's commands.  Officer Diehl has testified that Mr. Watson was belligerent and evasive at times.  Officer Diehl explained to Mr. Watson that he had received a call and advised Mr. Watson of the complaint regarding a male with an assault rifle.  Further, Officer Diehl informed Plaintiff of the description of the suspect.  Mr. Watson does not dispute that he partially matched the suspect's description.

While conducting his investigation, Officer Diehl instructed Mr. Watson several times to stay away from the black bag. At this time, Sergeant Ron Nicol arrived on scene to assist Officer Diehl. Sergeant Nicol observed Officer Diehl requesting Mr. Watson to stay away from the bag and remain seated. Sergeant Nicol brandished his taser to gain compliance. After four or five additional commands, Mr. Watson complied and sat down on the curb. Mr. Watson reached for his bag, and unzipped it. The officers at that time were unaware of the true contents of the bag. Sergeant Nicol warned Mr. Watson not to reach inside the bag, or he would be tased. Mr. Watson ignored Sergeant Nicol's warning, and put his hand inside the bag, at which point Sergeant Nicol immediately tased him. The officers then instructed Mr. Watson to get on his stomach. He was handcuffed, arrested, and then transported to the Marysville Police Department where he was charged with the offense of Obstructing Official Business. After taking him into custody, the officers confirmed that Mr. Watson's bag contained a computer. Officers with the MPD ultimately confirmed that an individual—not Mr. Watson—located at 414 Mill Wood Drive possessed an assault rifle, a short distance from the location of Mr. Watson's arrest.

In his Complaint, Mr. Watson claims that Officers Diehl, Sergeant Nichols, and other Defendant Officers involved lacked probable cause at all times during their encounter with Mr. Watson, and acted with malice and wanton indifference to his rights. (Compl. ¶¶ 23-24.) He alleges that the officers' actions constituted excessive force and deprived him of his liberty without due process of law. (*Id.*) Mr. Watson claims that he continues to feel pain from the injuries caused by the officers, both mental and physical. (*Id.* ¶ 21.) Finally, Mr. Watson alleges that the City of Marysville maintains a system of review and police conduct so ineffective that it permits and tolerates unreasonable and excessive force by the MPD's police officers, such that

its officers are more likely to use excessive or unreasonable force against individuals in the future.  (*Id.* ¶¶ 26-27.)

### B.  Procedural History

On June 14, 2008, a complaint was filed against Mr. Watson in the Marysville Municipal Court charging him with a single count of obstructing official business in violation of Ohio Rev. Code § 2921.31(A).  On August 4, 2008, Mr. Watson filed a motion to suppress evidence in that court challenging the constitutionality of the interaction between him and the MPD officers.  A hearing on that motion was held on September 11, 2008.  The motion to suppress was denied from the bench.  In denying the motion to suppress, the trial court found that the officers had reasonable suspicion to temporarily detain Mr. Watson, and probable cause to arrest him.  On September 22, 2008, a jury trial was held in the Marysville Municipal Court.  Mr. Watson was found guilty by the jury of obstructing official business, and the court sentenced him to one day in jail and a subsequent period of probation.  On December 21, 2009, the Third District Court of Appeals affirmed the trial court's decision.  The Ohio Supreme Court declined jurisdiction to review the appellate court's decision.

On June 10, 2010, Mr. Watson filed his Complaint against Defendants asserting federal claims pursuant to 42 U.S.C. § 1983 for violations of Constitutional rights, as well as state tort law claims.  Mr. Watson's Complaint sets forth 18 separate causes of action, including claims under the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution, as well as tort claims for Assault and Battery, False Imprisonment and False Arrest, Intentional Infliction of Emotional Distress, Malicious Abuse of Process, and Negligence.  Defendants now move for summary judgment, maintaining that no genuine issues of material fact exist within any of Mr. Watson's claims.  Defendants also submitted the digital video recording of Mr. Watson's arrest taken from

the dashboard camera mounted in Officer Diehl's police cruiser, which the Court reviewed in addition to briefings from both sides.

### III. STANDARD OF REVIEW

Summary judgment on a claim or part of a claim is appropriate where "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment will not lie, however, "if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Jones v. Potter*, 488 F.3d 397, 402-03 (6th Cir. 2007).  The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).

Although all inferences must be drawn in favor of the non-moving party, "that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment." *Matheney v. City of Cookeville*, 2012 FED App. 0150N, at *6 (6th Cir. February 7, 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  In other words, the non-moving party "may not rest merely on allegations or denials in its own pleading," *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994), but must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  The mere existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Leonard v. Pryne*, No. 1:07-cv-283, 2008 U.S. Dist. LEXIS 122110, at *13 (S.D. Ohio June 24, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)).

## IV. LAW AND ANALYSIS

### A. Plaintiff's Claims for Violations of His Federal Rights

Defendants assert that Mr. Watson cannot establish that he was deprived of any rights established by the Constitution or federal law, and therefore, Defendants cannot be held liable under 42 U.S.C. § 1983. Section 1983 provides plaintiffs with "a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .'" *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). Counts I through V of Mr. Watson's Complaint allege violations of his federal constitutional rights under the Fourth, Fifth, and Eighth Amendments and of his "statutory civil rights," including an unconstitutional policy and practice on behalf of the City of Marysville. If Mr. Watson fails to establish the existence of a genuine issue of material fact as to one or more of these alleged rights violations, Defendants are entitled to summary judgment on the Section 1983 claim for damages. Before reaching the merits of Mr. Watson's claims, the Court first examines certain threshold issues raised by Defendants' motion which, if successful, preclude Mr. Watson from recovery as a matter of law.

### 1. The *Heck* Doctrine's Bar to Civil Recovery

First, the Court examines the threshold issue raised by Defendants of whether the ruling from *Heck v. Humphrey* serves as a bar to Mr. Watson's claims for recovery in this case. *See* 512 U.S. 477 (1994). Under *Heck*, "a plaintiff cannot recover in a § 1983 suit when the basis for

the claim necessarily implies the invalidity of a previous state criminal conviction." *Matheney*, 2012 FED App. 0150N at *6. Specifically, the Supreme Court held that:

> In order to recover damages for allegedly unconstitutional . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C.S. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486-87.

In other words, "[i]f the § 1983 action would challenge the validity of a state court criminal conviction, the action is barred unless the state court conviction has been overturned or expunged." *Matheney*, 2012 FED App. 0150N, at *7. The Sixth Circuit has interpreted *Heck* to provide two circumstances where an upheld criminal conviction preempts a plaintiff's Section 1983 claims of excessive force arising from the same events:

> The first is when the criminal provision makes the lack of excessive force an element of the crime. The second is when excessive force is an affirmative defense to the crime . . . . In both of these circumstances, the § 1983 suit seeks a determination of a fact that, if true, would have precluded the conviction.

*Id.* (quoting *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)).

*Heck*'s bar is not available for claims of excessive force allegedly used *after* the plaintiff was handcuffed and arrested. *Matheney*, 2012 FED App. 0150N, at *9. Mr. Watson, however, admits that "he is merely making a claim for the way that he was treated prior to his arrest," referring to his being tased. (Dkt. 39, p. 9.) Further, Mr. Watson does not deny the validity of his conviction, which was upheld by the Court of Appeals and which the Supreme Court of Ohio declined jurisdiction. *See State v. Watson*, Case No. 14-09-01, 2009 Ohio App. LEXIS 5631

(Ohio Ct. App. Dec. 21, 2009), *appeal denied*, 2010 Ohio LEXIS 1219 (Ohio, May 26, 2010).[1]
*Heck*, therefore, will act to bar Mr. Watson's recovery for his Section 1983 claims if succeeding on them would "*necessarily* imply the invalidity of the conviction." *Matheney*, 2012 FED App. 01510N, at *8.

As a result of the incident set forth in the instant complaint, Mr. Watson was convicted of obstructing official business in violation of Ohio Rev. Code § 2921.31(A), which required the jury to find beyond a reasonable doubt that "the defendant, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity did an act that hampered or impeded the Marysville Police Department in the performance of their lawful duties."[2] (Dkt. 31; Tr. Trans., Marysville Mun. Ct. No. 08CRB667, 160:11-21.) The Third District Court of Appeals thereafter affirmed that "the trier of fact could reasonably infer that Watson purposefully obstructed the officers' investigation of the gunman and that the officers were delayed from their investigation due to his belligerent actions." *Watson*, 2009 Ohio App. LEXIS 5631 at *8.

Mr. Watson argues that affording him civil relief here would in no way imply the invalidity of his previous conviction. At least with respect to the excessive force portion of his Fourth Amendment claim, Mr. Watson is correct. *See McGee v. City of Cincinnati Police Dep't*,

---

[1] Federal courts may take judicial notice of proceedings in other courts of record. *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980); *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969), *cert. denied*, 397 U.S. 1065 (1970).

[2] O.R.C. § 2921.31 states:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.
>
> (B) Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

-8-

2007, No. 1:06-CV-726, U.S. Dist. LEXIS 28665, at *11 (S.D. Ohio Apr. 18, 2007) ("The Supreme Court has interpreted the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons … against unreasonable seizures,' as providing the right to be free from excessive force.") (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)).  Finding a lack of excessive force used was not a required element for conviction, nor an affirmative defense.  While the conviction required the officer's to be "acting in the performance of a lawful duty," *Watson*, 2009 Ohio App. LEXIS 5631 at *7, which was their investigation of a possible armed suspect, it did not require that they necessarily executed their lawful investigation in an entirely reasonable fashion.  In other words, the "official business" which Mr. Watson obstructed had a lawful basis, but their use of force on him may still have been excessive.  *See, e.g.*, *Donovan v. Thames*, 105 F.3d 291, 294 (6th Cir. 1997) (in which a state conviction for resisting arrest did not bar federal excessive force claim).

     In upholding Mr. Watson's conviction, the appellate panel affirmed the trial court's rulings on Mr. Watson's motion to suppress that: (i) "Officer Diehl had an articulable reasonable basis to temporarily detain [Watson]," and (ii) "probable cause to arrest the Defendant for obstruction of official business."  *Watson*, 2009 Ohio App. LEXIS 5631, at *7.  This Court ruled, in *Gueye v. Hamilton County Pub. Library*, Case No. 1:09-cv-730, 2009 U.S. Dist. LEXIS 101829, at *8 (S.D. Ohio Oct. 21, 2009), that "[t]o the extent plaintiff alleges a claim of false arrest or detention, such allegation is actionable only if plaintiff can establish the defendant lacked probable cause to support the arrest."  Mr. Watson's conviction, like the plaintiff's conviction in that case, "conclusively establishes probable cause for his arrest or detention."  *Id.* at *9.  Thus, Mr. Watson is estopped by his conviction in state court "from now challenging the reasonableness of [his] arrest in the instant § 1983 action."  *Daubenmire v. City of Columbus*,

507 F.3d 383, 390 (6th Cir. 2007); *see also Donovan*, 105 F.3d at 298 (holding that the plaintiff "is precluded from relitigating the issue of the validity of his arrest" where, as here, "the state court already determined that the officers had probable cause to arrest [Plaintiff] and that the arrest was valid").

Mr. Watson's claims for unlawful detention and arrest under the Fourth Amendment are precluded as a matter of law.

### 2. Qualified Immunity

Although Mr. Watson's state court conviction may not entirely preclude his Section 1983 claims for excessive force, the officers are entitled to qualified immunity in this case. The doctrine of qualified immunity "ensure[s] that fear of liability will not unduly inhibit officials in the discharge of their duties" by shielding government officials from personal liability in Section 1983 cases "so long as they have not violated a clearly established right . . . ." *Camreta v. Greene*, 131 S. Ct. 2020, 2030-31 (2011); *see also Pearson v. Callahan*, 555 U.S. 223, 230 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (citations omitted). After reviewing the established state court record and the videotape of the arrest, the Court finds no genuine issue of fact that, if the officers' treatment of Mr. Watson in some way violated his statutory or constitutional rights, such rights were so well-established as to warrant rejection of their claim of qualified immunity.

This Court and this Circuit has consistently followed a three-step inquiry in determining whether to grant qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in
> the light most favorable to the plaintiffs show that a constitutional violation has

-10-

> occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. If the answer to all three questions is "yes," qualified immunity is not proper.

*Zar v. Payne,* 760 F. Supp. 2d 779, 785 (S.D. Ohio 2011), Marbley, J. (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (citations omitted)).

Viewing the facts of Mr. Watson's arrest in his favor, he is in all likelihood unable to satisfy the first step of showing that any constitutional violation has occurred.  But even if the Court assumes, *arguendo*, that the tasing was a violation of his Fourth Amendment rights, it was by no means a "clearly established" right under the circumstances, and the officers' actions were not "objectively unreasonable."  *See id.*  In his opposition briefing, Mr. Watson's only complaint is a violation of his Fourth Amendment rights against unreasonable searches and seizures based on the officers' decision to tase, which he claims was unreasonable and excessive.  (Dkt. 39, p. 11.)  It makes sense, therefore, to consider first the question of whether there is a triable issue that the only alleged rights infringement, even if proven, was a clearly established one.  *See Zurn*, 760 F. Supp. 2d at 785 ("The Court need not consider these [three] questions in a particular order."); *Pearson*, 555 U.S. at 241 ("[T]here will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question [of] whether the relevant facts make out a constitutional question at all.").

The second prong of the qualified immunity test requires the Court to determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz,* 533 U.S. 194, 202 (2001).  As the Supreme Court's language suggests, "the analysis of whether a right is 'clearly established' must be 'undertaken in light of

the specific context of the case, not as a broad general proposition.'" *Zar*, 760 F. Supp. 2d at 786 (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008)).  The question for this Court to decide is whether Sergeant Nicol acted within a reasonable interpretation of the law when he decided to tase Mr. Watson after he reached inside his shoulder bag, *even if* it constituted a violation of Mr. Watson's rights.  *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.").[3]

As this Court has previously observed, "[t]here exist a multitude of cases in which courts have held that the use of non-deadly force, such as pepper-spray or a taser, to subdue a defendant who is armed or who poses an immediate threat does not amount to excessive force." *McGee*, 2007 U.S. Dist. LEXIS at *14.  Mr. Watson claims that the tasing was objectively unreasonable because "at no point did Plaintiff pose a risk of harm to anyone," or attempt to flee.  (Dkt. 39, p. 11.)  The Court in *McGee* granted qualified immunity to the tasing officer where the defendant failed to comply with the officer's orders and the officer had reason to believe the defendant was armed.  *Id.*  The Court reasoned, "while McGee had not brandished a weapon . . . Officer Rackley had reason to believe that he posed a threat."  *Id.*

This case is analogous to *McGee*, and Mr. Watson provides neither factual distinctions nor legal precedent to persuade the Court to reach a different result.  The officers here had no reliable basis for knowing what was inside Mr. Watson's black shoulder bag, and Mr. Watson

---

[3] This Court has already confirmed, *supra*, the prior state court determinations that Officer Diehl had reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 16 (1968), to stop and question Mr. Watson based on the call the officers received about a suspect in the area matching Mr. Watson's description armed with an AK-45 automatic firearm, and that "because of [Watson's] refusal to stay away from his black bag and his continued evasiveness" the officers had probable cause to arrest him "for obstruction of official business when he tried to enter the black bag."  *Watson*, 2009 Ohio App. LEXIS at *9.

concedes that the bag was "capable of containing a broken down assault rifle." *Watson*, 2009 Ohio App. LEXIS at *14. Moreover, Mr. Watson repeatedly disobeyed instructions to keep his hands away from the bag, and was even specifically warned by Sergeant Nicol that if he reached inside he would be tased.

Unlike in *Zar*, where "many of the underlying facts that would determine whether the officers' use of force was reasonable [we]re in dispute," in this case the "legal question of qualified immunity" does not "turn[] upon which version of the facts one accepts." *Zar*, 760 F.2d at 791. Perhaps because the entire episode was recorded on videotape, the parties do not dispute any material aspects of Mr. Watson's encounter with the officers and subsequent arrest. Mr. Watson simply insists that the decision to employ the non-deadly force of tasing him was unjustified. Mr. Watson has failed to demonstrate how the officers violated clearly established rights. *See Ruffin v. Nicely*, 183 F. App'x 505, 512 (6th Cir. 2006) ("The burden of proving that the right was clearly established 'rests squarely on the plaintiff.'") (citations omitted). Because there is no well-established law that would have informed either Officer Diehl or Sergeant Nicol that tasing Mr. Watson after he defied instructions by reaching into his bag—which they had probable cause to believe might contain a firearm—was unconstitutional, the officers are entitled to qualified immunity. *Saucier*, 533 U.S. at 202 (in order to deny qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right").

Establishing immunity for the individual officers necessarily resolves Mr. Watson's derivative claims for municipal liability and supervisory liability against the City of Marysville and the chief and assistant chief of the Marysville Police Department. *See Austin v. Redford Twp. Police Dep't*, No. 2:08-CV-13236, 2011 U.S. Dist. LEXIS 116792, at *15 (E.D. Mich. July

18, 2011) ("[P]laintiff's municipal liability claim is derivative of his claim against the individual officers, and success on the municipal liability claim requires plaintiff to first establish that the individual defendants violated his constitutional rights.") (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point.").

Summary judgment is therefore appropriate on Mr. Watson's claims for violations of his constitutional and statutory rights at the hands of the Defendants, contained in Counts I through V of the Complaint.[4]

### B.  Plaintiff's State Law Claims

Having dismissed all of Mr. Watson's federal causes of action under Section 1983, to the extent they might have continued viability, the Court declines to exercise further jurisdiction over Mr. Watson's remaining state law claims.  *See McGee*, 2007 U.S. Dist. LEXIS, at *22; *see also Jackim v. City of Brooklyn*, No. 1:05 cv 1678, 2007 U.S. Dist. LEXIS 20355, at *76 (N.D. Ohio March 22, 2007), aff'd by *Jackim v. Sam's East, Inc.*, 378 F. App'x 556 (6th Cir. 2010) (dismissing, in a 1983 action, remaining state law claims in tort for reckless infliction of emotional distress and *respondeat superior* stating that "[w]here all federal claims are dismissed prior to trial, the general rule is that it is appropriate for the trial court to decline to exercise

---

[4] Again, it should be noted that Mr. Watson does not even bother to defend his claims for violations of his Fifth Amendment, or Eighth Amendment rights in his briefing in opposition to Defendants' motion for summary judgment.  The Court, therefore, need not address them.  *See* Fed. R. Civ. P. 56(e); *Barnhart v. County of Branch*, No. L88-322 CA5, 1990 U.S. Dist. LEXIS 5804, at *5 (W.D. Mich. May 11, 1990) ("Where, as here, the moving party has supported its motion with documents, the non-moving party may not rest on the mere allegations or denials of the pleadings, but must set forth 'specific facts showing that there is a genuine issue of trial.'") (quoting *Davis v. Robbs*, 794 F.2d 1129, 1130 (6th Cir. 1986)).

jurisdiction over pendant state law causes of action"). The Court dismisses, without prejudice, Mr. Watson's state law claims.

## V. CONCLUSION

Plaintiff is precluded from recovery on his claims brought under Section 1983 due to his prior criminal conviction for obstructing official business, and because the Defendant Officers are entitled to qualified immunity. Defendants' Motion for Summary Judgment is hereby **GRANTED**, and Plaintiff's federal causes of action, contained in Counts I through V, are hereby **DISMISSED** with prejudice. Plaintiff's remaining state law claims are **DISMISSED**, without prejudice.

**IT IS SO ORDERED.**

<u>s/Algenon L. Marbley</u>
**Algenon L. Marbley**

**DATED: March 20, 2012**